**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GAVIN EVANS,

                    Plaintiff,

    v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

                 Defendants.

Case No. 23-cv-16473

## COMPLAINT

Plaintiff Gavin Evans ("Plaintiff" or "Evans") hereby brings the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I.     JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the

United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, sell products using unauthorized copies of Plaintiff's federally registered copyrighted works (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II.     INTRODUCTION

3.     Plaintiff filed this case to prevent e-commerce store operators who trade upon Plaintiff's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' infringement of his registered copyrighted works, as well as to protect consumers from purchasing Unauthorized Products over the Internet. Plaintiff has been, and continues to be, irreparably damaged through Defendants' infringement of his copyrighted works and therefore seeks injunctive and monetary relief.

2

### III.    THE PARTIES

4.    Gavin Evans is an individual residing in Berlin, Germany and is the owner of the copyrighted works asserted herein.

5.    Born in Sunderland, England, Evans is a world-renowned photographer well-known for his unflinching and uncompromising photography portrait sessions with celebrities such as David Bowie, Iggy Pop, Gary Oldman, Harvey Keitel, Daniel Craig, Björk, and many others. His career has included stints for such world-famous publications as Vogue, Time Out, the New York Times, and the Guardian. Additionally, his work in portraiture and beyond has been featured in many renowned institutions, including the MoMa, the Harpa, the Victoria and Albert Museum of London, and The Institute in Berlin.

6.    The copyrighted works Plaintiff seeks to protect by this action are images of David Bowie taken during a July 1995 photo shoot for Time Out Magazine, known popularly known as "The Session" (the "Session Photographs"). The Session Photographs have been prominently featured on the back cover of the Victoria and Albert Museum's "David Bowie Is" exhibition catalogue, the David Bowie Art Auction Catalogue for Sotheby's in 2016, and even the cover of Rolling Stone magazine.

7.    The Session Photographs ("Plaintiff's Copyrighted Works") are registered with the United States Copyright Office. A true and correct copy of the U.S. Copyright Registration for Plaintiff's Copyrighted Works is attached hereto as **Exhibit 1**.

8.    Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display Plaintiff's Copyrighted Works to the public.

9.     Authorized products bearing copies of Plaintiff's Copyrighted Works ("Plaintiff's Products") are distributed and sold to consumers through various channels, including through online galleries such as lumas.com and sfae.com.  Plaintiff's Products are only sold through authorized channels and are recognized by the public as being exclusively associated with Plaintiff.

10.     Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.  On information and belief, Defendants reside and/or operate in foreign jurisdictions or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

11.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network.  If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV.     DEFENDANTS' UNLAWFUL CONDUCT

12.     The popularity of the Session Photographs have resulted in significant copying of Plaintiff's Copyrighted Works.  Because of this, Plaintiff investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps.  Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Alibaba Group Holding Ltd. ("Alibaba"), AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), Ecrater.com ("eCRATER"),

Etsy, Inc. ("Etsy"), Pixels.com, LLC d/b/a Fine Art America ("Fine Art America"), SIA Joom ("Joom"), Printerval.com ("Printerval"), and Context Logic, Inc. d/b/a Wish.com ("Wish"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services because of increased sales from foreign online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 2**).

13.     Because the infringing products sold by offshore online infringers do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of infringing goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

14.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating

Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]." **Exhibit 3** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order." *Id.* at p. 161.

15. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, sell Unauthorized Products to residents of Illinois.

16. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit

6

cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to copy and/or distribute Plaintiff's Copyrighted Works, and none of the Defendants are authorized retailers of Plaintiff's Products.

17.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

18.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

19.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the

Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

20.     E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators, like Defendants, of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

21.     Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

22.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use unauthorized copies of Plaintiff's Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

8

23.     Defendants' unauthorized copying of Plaintiff's Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the U.S., including Illinois, infringes and continues to infringe Plaintiff's Copyrighted Works and is irreparably harming Plaintiff.

**COUNT I**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT**
**REGISTRATIONS (17 U.S.C. §§ 106 and 501)**

24.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

25.     Plaintiff's Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*.

26.     Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Copyrighted Works.   Plaintiff's Copyrighted Works are protected by a copyright registration number that was issued by the United States Copyright Office. At all relevant times, Plaintiff has been, and still is, the owner of all rights, title, and interest in Plaintiff's Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

27.     Plaintiff's Copyrighted Works are published on the internet and available to Defendants online.   As such, Defendants had access to Plaintiff's Copyrighted Works via the Internet.

28.     Without authorization from Plaintiff, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating Plaintiff's Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products.  Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of Plaintiff's Copyrighted Works.

9

Such conduct infringes and continues to infringe Plaintiff's Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

29.     Defendants reap the benefits of the unauthorized copying and distribution of Plaintiff's Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

30.     Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of Plaintiff's Copyrighted Works.

31.     On information and belief, the Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiff's rights.

32.     The Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

33.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of Plaintiff's Copyrighted Works.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. reproducing, distributing copies of, making derivative works of, or publicly displaying Plaintiff's Copyrighted Works in any manner without the express authorization of Plaintiff;

b. passing off, inducing, or enabling others to sell or pass off products as Plaintiff's Products or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale bearing Plaintiff's Copyrighted Works;

c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing Plaintiff's Copyrighted Works and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's Copyrighted Works;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms such as Alibaba, AliExpress, Amazon, eBay, eCRATER, Etsy, Fine Art America, Joom, Printerval, and Wish shall disable and cease displaying any advertisements used by or

11

associated with Defendants in connection with the sale of infringing goods which bear Plaintiff's Copyrighted Works;

3) As a direct and proximate result of Defendants' infringement of Plaintiff's Copyrighted Works, Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

4) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

5) Plaintiff is further entitled to recover his attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 4th day of December 2023.          Respectfully submitted,

/s/ Martin F. Trainor
Martin F. Trainor
Sydney Fenton
Richard Poskozim
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
sydney@tme-law.com
richard@tme-law.com

*Counsel for Plaintiff Gavin Evans*

12